IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>**THEODORE R. ANDRESS, JR.,**<br>aka Ted Andress,<br>aka Kite Mechanical Service Inc.,<br>aka Kite Service Company,<br><br>Debtor. | **Filed / Docketed<br>August 17, 2007**<br><br>Case No. 05-11919-M<br>Chapter 7 |
| **CUSTOM HEATING & AIR, INC.,**<br>an Oklahoma corporation,<br><br>Plaintiff,<br><br>v.<br><br>**TED ANDRESS, an individual,**<br><br>Defendant. | Adv. No. 05-01088-M |

## MEMORANDUM OPINION

Upon remand from the United States District Court for the Northern District of Oklahoma (the "District Court"), this Court has been charged with the task of determining what amount, if any, of additional damages should be awarded to Custom Heating & Air, Inc. ("Custom"), the Plaintiff herein. The Court has conducted a thorough reexamination of the record in this case and the law presented to it by the District Court and the parties. After applying the mandate of the District Court, the judgment of this Court remains unchanged. Of the amounts owed to Custom by Ted Andress ("Andress"), the total sum of $5,000 should not be discharged. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

**Jurisdiction**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b),[1] and its reference to this Court is proper pursuant to 28 U.S.C. § 157(a). Issues of non-dischargeability of debt are core proceedings under the terms of 28 U.S.C. § 157(b)(2)(I). The Court thus has authority to issue its findings of fact, conclusions of law, and judgment.

**Burden of Proof**

The burden of proof remains upon Custom to prove the elements of its case, including damages, by a preponderance of the evidence.[2] Exceptions to discharge are to be narrowly construed in favor of the debtor.[3]

**Findings of Fact**

In its Memorandum Opinion entered in this adversary proceeding on June 28, 2006,[4] the Court made detailed findings of fact. None of those factual findings were disturbed on appeal. They are incorporated herein by this reference.

It bears restating that under the APA, the purchase price for Kite was $100,000, which the parties allocated as follows:

Intangibles:                    $55,000

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

[2] *See Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).

[3] *See Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir. 1986), *abrogated on other grounds by Grogan,* 498 U.S. at 279. *See also AT&T v. Herrig (In re Herrig),* 217 B.R. 891, 895 (Bankr. N.D. Okla. 1998).

[4] *See Docket No. 30.* Unless otherwise noted, all terms defined in the original Memorandum Opinion shall have the same meaning in this Memorandum Opinion.

| | |
|---|---|
| Equipment: | $35,000 |
| Inventory: | $ 5,000 |
| Covenant not to Compete: | $ 5,000 |

Townsend, the president and chief operating officer of Custom ("Townsend"), confirmed the purchase price of $100,000 in his direct testimony.[5] Under the APA, the intangible assets of Kite to be purchased included the name Kite Mechanical Services, Inc., all of Kite's business telephone numbers, all of Kite's customer lists, its computer files, and all of its customer service records for the three-year period prior to the purchase. Custom offered no evidence to show that it did not receive all of the intangible assets of Kite.

As noted in the Memorandum Opinion, the only evidence regarding Andress's breach of his covenant not to compete related to residential service with three individuals (Jackson, Allen, and Reish), and Townsend's speculation that Andress had contracted for other business in violation of the APA and the Employment Agreement.[6] With respect to these three individuals, the Court received no evidence as to the amount of profit Custom expected to receive from any of these jobs. To the extent Townsend speculated that Andress had engaged in other jobs, whether commercial or residential, Custom offered no evidence as to the profit to be derived from any of these jobs. The only evidence of lost profits offered by Custom was Townsend's testimony regarding the total

---

[5] *Transcript of Proceedings Held on April 26, 2006, Docket No. 28*, Page 27, Lines 18–20.

[6] *See Memorandum Opinion, Docket No. 30*, at 6–8. The Court reiterates that with the exception of these three individuals, all of whom appeared and testified at trial, the Court found as a matter of fact that although "Townsend believe[d] that Andress performed other work in his own name while in the employ of Custom[,] [t]his belief was based more on suspicion than fact." *Id.* at 7.

amount of profit he expected to derive from the acquisition of Kite. As noted in the original Memorandum Opinion, "[a]t best, Townsend's testimony was general in nature, and went to the entire failure of the Kite purchase, not just to damages caused by Andress's breach of the covenant not to compete."[7] Neither Townsend nor any other individual who testified on behalf of Custom offered any specific opinion as to the value of goodwill allegedly lost as a result of Andress's breach of the covenant not to compete.

Under the terms of the Employment Agreement, Custom advanced the sum of $120,000 to Andress. These monies were placed in escrow and ultimately used to satisfy certain tax liabilities owed by Andress. Notwithstanding the fact that Custom terminated the employment of Andress before these monies were fully earned, they have not been repaid.

Given the present focus on the issue of goodwill, the Court further finds that residential purchasers of a heating and air conditioning system rarely purchase a second system. This factual finding is based upon Townsend's uncontroverted testimony that the average residential customer purchases only 1.7 air conditioning systems "in their lifetime."[8]

## Procedural Posture

This adversary proceeding was originally tried to this Court on April 26, 2006. Prior to that trial, Custom obtained the Judgment against Andress in the District Court in and for Tulsa County, Oklahoma. The Judgment was in the amount of $185,000, plus fees and costs. The Judgment arose out of the sale of Kite to Custom, all as more fully detailed in the original Memorandum Opinion.

---

[7] *Id.* at 19 (footnote omitted).

[8] *Transcript of Proceedings Held on April 26, 2006, Docket No. 28*, Page 172, Lines 18–20.

After entry of the Judgment, Andress filed a Chapter 7 bankruptcy case seeking to discharge, among other debts, the amount represented by the Judgment. Custom filed this adversary proceeding, seeking a determination that the Judgment was nondischargeable. At trial, Custom took the position that the Judgment was nondischargeable in its entirety, relying upon the principle of collateral estoppel as well as the *Rooker-Feldman* doctrine. No effort was made to ascribe all or any portion of the Judgment to any particular manner of damage, such as loss of goodwill or lost profits.

After review of the evidence and argument, the Court rejected the position advanced by Custom regarding the preclusive nature of the Judgment. Based upon its own review of the evidence, the Court concluded that Andress had willfully and maliciously breached his covenant not to compete with Custom. The Court further determined that the proper measure of damages for breach of the covenant not to compete was the value ascribed to it by the parties in the APA ($5,000), and that Custom was entitled to a judgment of nondischargeability in that amount. Custom appealed the decision to the District Court. In its designation of issues on appeal, Custom alleged that this Court "erred in calculating the Plaintiff's [Custom's] damages."[9]

On April 20, 2007, a report and recommendation was issued to the District Court by the Honorable Paul J. Cleary, United States Magistrate Judge. The report recommended that many of the determinations made by this Court should be affirmed. In addition, the recommendation was made that the adversary be remanded to this Court "for consideration of Custom's damages, if any, from the loss of goodwill resulting from Andress'[s] breach of his non-compete agreement with Custom."[10] The report and recommendation was approved by order of the District Court entered on

---

[9] *See Docket No. 43*.

[10] *See Report and Recommendation, Docket No. 52*, at 1–2.

May 9, 2007.[11]

## Conclusions of Law

The issue of loss of goodwill as an element of Custom's damages was raised for the first time in the appeal to the District Court. There is no mention of the concept of goodwill in the joint pre-trial order submitted by the parties.[12] In the post-trial brief submitted by Custom in lieu of closing argument, aside from a single reference in a quoted section from the Judgment, the term "goodwill" does not appear.[13] Indeed, in 244 pages of trial transcript, the term "goodwill" is not to be found.[14] As a result, this Court has been placed in the unusual position of considering an issue for the first time upon remand.

On remand, Custom argues that it has suffered damages to its goodwill in the amount of $180,000, based upon: (1) damages for Andress's breach of the covenant not to compete, valued in the APA at $5,000; (2) damages to the intangible assets of Kite purchased by Custom, valued in the APA at $55,000; and (3) the $120,000 paid to Andress in advance under the terms of the Employment Agreement which Custom now alleges "represented additional goodwill in return for Andress's promise to promote and deliver to Custom the goodwill of Kite Mechanical as part of its sale."[15] On remand, the Court will confine itself to the measure of damages advanced by Custom.[16]

---

[11] *See Docket No. 55.*

[12] *See Docket No. 23.*

[13] *See Docket No. 27.*

[14] *See Docket No. 28.*

[15] *Plaintiff's Trial Brief on Damages, Docket No. 58*, at 15.

[16] Had the Court limited its measure of damages to that advanced by Custom at trial, it would have likely awarded Custom nothing. The only argument presented at trial by Custom

According to the Oklahoma Supreme Court,

> "Good Will" has been defined as the custom or patronage of any established trade or business; the benefit or advantage of having established a business and secured its patronage by the public. *See Black's Law Dictionary, Third Edition*. The "good will" value of any business is the value that results from the probability that old customers will continue to trade with an established concern.[17]

The goodwill of a business is an asset which can be bought or sold.[18] Like any other asset, goodwill can also be damaged.[19]

This Court has been instructed to reassess the damages, if any, attributable to loss of goodwill by Custom as a result of the previously identified willful and malicious conduct of Andress. Under Oklahoma law,

> The general rule of damages is that damages for the breach of a contract cannot be recovered unless they are clearly ascertainable, both in their nature and origin, and unless it is established they are the natural and proximate consequences of the breach and are not contingent or speculative. This is also the rule in Oklahoma.
>
> It is also well settled that the amount of damages resulting from such a breach must be ascertainable with some degree of certainty and may not be based on mere speculation and conjecture alone. But when a breach of a contractual obligation with resulting damage has once been established, the mere uncertainty as to the exact amount of damages will not preclude the right to a recovery. In such cases it will be enough if the evidence shows the extent of the damages as a matter of just and

---

was that the Judgment was binding on this Court as the measure of damages. That argument was rejected by this Court and its rejection was affirmed on appeal.

[17] *Freeling v. Wood*, 361 P.2d 1061, 1063 (Okla. 1961). *See also Westric Battery Co. v. Std. Elec. Co., Inc.*, 522 F.2d 986, 987–88 (10th Cir. 1975) ("[Goodwill] is that which attaches to a business on account of name, location, reputation for competency and the imponderables which cause buyers to return.") (footnote omitted).

[18] *Id. See also* Okla. Stat. Ann. tit 15, § 218 (West 1996).

[19] *Avery v. City of Lyons*, 331 P.2d 906, 914 (Kan. 1958) (cited with approval in *Equifax Services, Inc. v. Hitz*, 968 F.2d 1224 (10th Cir. 1992) (unpublished decision)).

reasonable inference although the result may be only approximate.[20]

The measure of damages to goodwill is a question of fact to be submitted to the trier of fact.[21] Many courts have noted that ascribing a dollar value to the amount of lost goodwill is a very difficult proposition.[22] As a result, courts have endorsed the use of liquidated damages clauses to compensate an aggrieved party in the event an agreement is breached and goodwill is lost.[23] Other courts that have awarded damages based upon a loss of goodwill have based their award on expert testimony or testimony of a corporate officer that was focused directly on the issue of goodwill and its value.[24]

As to the $5,000 in damages based upon the ascribed value of the covenant not to compete, this amount was determined by this Court to be nondischargeable. The award has not been challenged by either Custom or Andress. The Court remains convinced that this award is appropriate. It represents the value of Andress's covenant not to compete as determined by the parties at the time they entered into the APA. Indeed, the $5,000 figure in the APA could be considered analogous to a liquidated damages clause. This Court remains convinced that the APA and the value ascribed therein to the covenant not to compete is the only true evidence placed before

---

[20] *Gen. Fin. Corp. v. Dillon*, 172 F.2d 924, 930 (10th Cir. 1949) (footnotes omitted).

[21] *Rainbow Travel Serv. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1239 (10th Cir. 1990) (and cases cited therein).

[22] *Westric Battery Co.*, 522 F.2d at 988 (damage award for lost goodwill based upon testimony of expert appraiser and vice-president of competing company that had contemplated purchase of company in question); *Rainbow Travel Serv.*, 896 F.2d at 1239 (jury awarded $37,500 in damages for lost goodwill based upon testimony of corporate president that company had suffered loss of goodwill in the amount of $250,000).

[23] *See, e.g., Am. Multi-Cinema, Inc. v. Southroads, L.L.C.*, 115 F.Supp.2d 1257, 1268 (D. Kan. 2000) (and cases cited therein).

[24] *Westric Battery Co.*, 522 F.2d at 987.

the Court of the value of the covenant not to compete.

Custom seeks an additional award of damages in the amount of $55,000 based upon the price it paid for the general intangibles of Kite. Those assets included the name Kite Mechanical Services, Inc., all of Kite's business telephone numbers, all of Kite's customer lists, its computer files, and all of its customer service records for the three-year period prior to the purchase. There is no doubt that such assets constitute a portion of the goodwill of a business. For example, the retention of a business name and a phone number are key ingredients in securing future business for Custom from past customers of Kite—former customers of Kite in need of heating or air conditioning services are likely to call Kite at its old phone number. Similarly, old customers are intuitively more likely to keep doing business with a company that has access to all of their old repair and service records, as those records will be of assistance in providing future services. In this case, there is nothing in the record to establish that Custom did not receive these assets, or to show that Andress took any action to intentionally damage these assets. Put simply, when it comes to the intangible assets listed in the APA, Custom got what it paid for. There is not a sufficient (indeed, in the eyes of this Court, there is not **any**) evidentiary basis upon which to find that the intangible assets acquired under the APA were damaged.

Custom also argues that "[t]he $120,000.00 Custom paid to Andress as part of the closing of the APA represented additional goodwill in return for Andress's promise to promote and deliver to Custom the goodwill of Kite Mechanical as part of its sale."[25] This argument, raised to this Court for the very first time on remand, seems to be more a creation of counsel seeking a basis for a damage award than an accurate recitation of fact. Upon direct examination, Townsend

---

[25] *Plaintiff's Trial Brief on Damages, Docket No. 58*, at 15.

unequivocally testified that the purchase price for the assets of Kite was $100,000.[26] Consistent with that testimony, the APA reflects a purchase price of $100,000 for the assets of Kite. The $120,000 paid by Custom to Andress represented an advance to Andress under the terms of the Employment Agreement.[27] While Andress may have had a contractual obligation to return to Custom unearned monies advanced under the Employment Agreement, Custom has failed to show how such a debt is subject to a claim of nondischargeability under § 523(a)(6).[28]

If one defines goodwill as the "the value that results from the probability that old customers will continue to trade with an established concern,"[29] there is little if anything in the record to support an award of damages in this case. With respect to residential customers, goodwill seems to be in short supply, given Townsend's testimony that there is little, if any, repeat business expected from them.[30] On the commercial level, the Court does not find sufficient evidence in the record from which it can conclude that Andress acted in such a manner as to damage Custom's relationships with its existing commercial customers, or any commercial customers which belonged to Kite prior to the APA and which Custom expected would do business with Custom after the APA. Perhaps that

---

[26] *Transcript of Proceedings Held on April 26, 2006, Docket No. 28*, Page 27, Lines 18–20.

[27] *See Docket No. 27-4*, at 5–10.

[28] There has been no argument that the monies received by Andress under the Employment Agreement were procured by fraud or were nondischargeable under any section of the Bankruptcy Code other than § 523(a)(6).

[29] *Freeling v. Wood*, 361 P.2d 1061, 1063 (Okla. 1961).

[30] One must remember that we are talking about the **purchase** of new heating and air conditioning systems, and not the maintenance of existing systems. There is nothing in the record to suggest that Andress converted residential repair jobs which should have belonged to Custom. All of the evidence related to the installation of new systems.

10

is why Custom has chosen not to address the issue of goodwill using the definition adopted by the Oklahoma Supreme Court and the United States Court of Appeals for the Tenth Circuit.

As part of the remand of this case, in addition to considering the issue of goodwill, this Court has also been instructed to consider whether an additional award of damages should be made to compensate Custom for "lost profits resulting from Andress'[s] willful and malicious breach of the covenant not to compete."[31] The Court concludes that Custom has failed to meet its burden of proof to show any lost profits as a result of Andress's breach of his covenant not to compete. As noted in the original Memorandum Opinion, "Townsend's testimony was general in nature, and went to the entire failure of the Kite purchase, not just to damages caused by Andress's breach of the covenant not to compete."[32] Townsend testified that he did not make the money he expected to when he made the decision to acquire Kite. This failure to meet expectations, without more, does not support an award of damages based upon Andress's misconduct. The Court has no evidence regarding the alleged profit lost in any of the jobs specifically identified to the Court. There is nothing in the record which would establish that Andress interfered with any other relationships between Custom and the customers which it had prior to its acquisition of Kite, whether they be commercial or residential. In sum, there is nothing in the record that supports any meaningful calculation of damages on the basis of lost profits. Were the Court to award damages in this instance, it would be doing little more than throwing darts while blindfolded.

## Conclusion

Of the obligations owed by Andress to Custom, Custom is entitled to a judgment stating that

---

[31] *Report and Recommendation, Docket No. 52*, at 21.

[32] *Memorandum Opinion, Docket No. 30*, at 19.

11

$5,000 of those obligations are not discharged in this bankruptcy case. The balance of the obligations are discharged. A separate judgment consistent with this memorandum opinion shall be entered concurrently herewith.

Dated this 17th day of August, 2007.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

4975.5